## NECTAUX v. KANSAS CITY SOUTHERN RY. CO.

District Court, W. D. Louisiana, Shreveport Division. December 6, 1926.

No. 1601.

Railroads ⬳260—Railroad company, having direction of movement of trains of licensee, held liable for injury to employee by negligence of licensee.

A railroad company, which licensed use of its tracks by another company, licensee's trains to be moved under its direction, *held* liable to an employee for an injury received in collision, caused by negligent movement of a train of licensee.

At Law. Action by J. L. Nectaux against the Kansas City Southern Railway Company. On motion by defendant for new trial. Denied, on condition of remittitur by plaintiff.

Jones, Sexton, Jones & Buck, of Fort Worth, Tex., and Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, La., for plaintiff.

Wilkinson, Lewis & Wilkinson, of Shreveport, La., for defendant.

DAWKINS, District Judge. This is an action for damages under the federal Employers' Liability Law (Comp. St. §§ 8657–8665). At the conclusion of the trial the court instructed the jury to find for plaintiff, leaving to it alone the question of the amount to be awarded. Defendant has moved for a new trial, both upon the question of liability and because of the alleged excessive amount of the verdict.

The reasons orally given by the court in directing a verdict upon the question of liability I am convinced, after further consideration, are sound in law. The line of railroad upon which the injury happened was being used jointly by the defendant and another railroad, under an arrangement by which the movement and operation of trains of both companies were exclusively directed and controlled by defendant. The conductor of the licensee ignored signals upon the registry book kept at the point where it entered upon the line of defendant, and this train met in a head-on collision, that of defendant, upon which plaintiff was the engineer, inflicting upon him serious injuries, which have practically destroyed his earning power. Instead of having a telegraph operator at the point in question, a book was provided, in which the conductors of the two companies were required to register their passing and to give indications of whether or not the track was clear. This point was about a mile distant from the telegraph office of the licensee company, at which the train dispatcher of the defendant gave orders to the trains of the former for entering upon the joint line, and on the occasion in question an order permitting the train of the licensee to go upon the track had been delivered at said telegraph station. When the junction was reached, the conductor in charge should have observed the signals upon the registry book, but for some reason unexplained they were ignored, and the collision followed.

The situation in my opinion is no different to what it would have been, had the train order directed the conductor of the licensee to proceed upon the track after allowing the second section of the train of defendant to pass. In effect, when supplemented by the notation upon the book, the order meant just that. What would have been the liability of defendant, had its train order directed that the train in question proceed through the switch at 3 o'clock, and instead the conductor had gone through at 2 o'clock, and the accident had happened? He, the conductor, was certainly proceeding, in so far as his right to go upon the track was concerned, under the direction of defendant's train dispatcher, and I think it can hardly be said that he was not, in doing so, acting under the direction and control of defendant.

In such circumstances, was the defendant's duty to plaintiff fully discharged when the order was given, or was it bound to see, in so far as the latter's rights were concerned, that the order was observed? I cannot conceive that an employer may thus shift responsibility for its duty to its employees to see that its tracks are kept open for the movement of trains upon which they are employed. If so, then any of the great trunk lines of the country, over which trains pass hourly, may allow industries, such as lumber mills, factories, etc., to use their main lines at pleasure, subject only

to an observation of entries made upon a book at the junction points with such industries, and thereby endanger the lives of engineers and other employees who are required to run at high speed over such points. The only cases that I have been able to find directly in point—that is, where the owning company was sued by its own employee for injuries received through the negligence of the employees of the licensee under circumstances like the present—have held the owner liable. Baily v. L. & N. W. R. R. Co. et al., 129 La. 1029, 57 So. 325; Taylor v. L. & N. W. Ry. Co. et al., 129 La. 113, 57 So. 732; Ingram v. L. & N. W. R. R. Co., 128 La. 934, 55 So. 580; Ft. W. & D. C. Ry. Co. et al. v. Smith, 39 Tex. Civ. App. 92, 87 S. W. 371.

Many other cases have been cited by the defendant, but most of them involve actions by the employees of the licensee against the owner, where the latter had surrendered complete control of its line to the lessee, or were against their own employer, or involved circumstances where the defendant did not have control of the line or facilities, agents, etc., through which the injury happened. My conclusion is that the defendant was liable under the circumstances shown in this case.

As to the amount allowed, I think the same excessive. My view is that the sum of $30,000 would sufficiently compensate for the damages suffered by the plaintiff in this case.

For the reasons assigned, if the plaintiff shall, within 20 days from this date, enter a remittitur of the sum of $20,000 of the amount allowed by the jury, the motion for a new trial will be overruled. If not, then it will be granted upon the ground that the allowance is in excess of a fair valuation of the damages suffered.