## DAVID et ux. v. STATE BANK OF GROOM.
### (No. 1920.)

(Court of Civil Appeals of Texas. Amarillo. March 1, 1922.)

1. **Deeds �köö181, 182—Loss or destruction of deed does not divest grantee of title.**

The loss or destruction of a deed by a husband to his wife does not divest the wife of her title to the land conveyed thereby.

2. **Fraudulent conveyances �köö64(2)—Intent of deed by husband to wife held not to affect wife's right to rely on prior deed.**

Where a husband had validly conveyed land to his wife and he subsequently executed another deed to her conveying the same land because the first deed was lost before being recorded, which deed was attacked as in fraud of creditors, the intent of the grantor cannot affect the wife's right to rely upon her title under the former deed nor make her acceptance of the latter deed void as to her.

3. **Fraudulent conveyances �köö49(1)—Deed to replace former deed by husband to wife held not void as to creditors.**

Where a husband had validly conveyed land to his wife while not indebted, but subsequently, at a time when he was insolvent, executed a deed to her conveying the same land because the first deed was lost before being recorded, the last deed was not void as to creditors, since it took nothing from them upon which they

⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

had a right to rely for the payment of their debt.

**4. Fraudulent conveyances ⬦⟶206(1), 271(1) —Conveyance, whether voluntary or not, not fraudulent as to one not a creditor when given; burden on plaintiff to prove indebtedness.**

Where a husband deeded land to his wife, whether the deed was on a valid consideration or a voluntary conveyance, it would not be fraudulent as to plaintiff either under Rev. St. arts. 3966 or 3967, unless at that time the husband was indebted to plaintiff, the burden of establishing which fact was upon plaintiff.

**5. Fraudulent conveyances ⬦⟶210 — Wife's right not affected by husband's creditor's want of notice of deed, if he knew land was her separate property.**

Where a husband conveyed land to his wife, the wife's right to rely on the deed is not affected by the fact that a creditor of the husband did not have notice of the existence of the deed, if he was charged with notice that the land was the separate property of the wife when he filed his abstract of judgment.

**6. Fraudulent conveyances ⬦⟶210—Deed held notice that property conveyed was wife's separate estate.**

Where a deed was given by a husband to his wife to replace his prior deed which had been lost before being recorded, such correction deed, when duly recorded, was notice to the husband's creditor and to all the world that the property was the wife's separate estate paid for by her separate money.

**7. Fraudulent conveyances ⬦⟶208—Deferred payment out of community funds held not to make title of wife fraudulent as to one not then a creditor of husband.**

Where a husband deeded land to his wife purchased in the names of both, but part of which had been paid for out of her separate funds, that a deferred payment was made out of the community funds does not render the wife's title as to that portion fraudulent as to one who was not then a creditor of the husband.

**8. Fraudulent conveyances ⬦⟶310 — Findings as to fraudulent conveyances held conflicting.**

Where it was claimed that a conveyance by husband to wife was fraudulent as to creditors, a finding that the wife held the community interest in her name only *held* to conflict with a finding that the land was conveyed to her long before, and that later deed to her was given while the husband was not indebted, giving notice that the property was her separate estate, so that a judgment rendered on the verdict against the wife could not stand.

**9. Husband and wife ⬦⟶269—Vendor and purchaser ⬦⟶232(12) — That wife is living on land not notice of separate right when record title in community.**

That a wife is living on the land with her husband is not sufficient to afford notice of her separate right thereto, when the deed of record placed the title in the community.

**10. Trusts ⬦⟶23—Trust in favor of wife held not subject to registration laws.**

Where a conveyance by a husband to his wife in payment of an indebtedness to her created a trust for that amount in favor of the wife, such trust was not subject to the registration laws.

**11. Fraudulent conveyances ⬦⟶154(1)—Registration laws held applicable to unpaid balance of purchase money of land in wife's name.**

Where a husband conveyed land to his wife in payment of an antecedent debt and a part of the purchase money for the property was paid out of the community, as to such balance the registration laws would apply.

**12. Fraudulent conveyances ⬦⟶154(1)—Judgment ⬦⟶788(2) — "Creditor" securing lien with notice that property belonged to another held not protected under statute.**

Where one before he secured a lien on land as a creditor had notice that the land belonged to the debtor's wife's separate estate, such creditor will not be protected under Rev. St. art. 6824, he not having secured his lien without notice, a "creditor" who is protected under the statute being one who has acquired a lien by a proceeding at law, and not a simple contract creditor or one holding a contract lien.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Creditor.]

**13. Husband and wife ⬦⟶129(3)—Allowing title to remain in name of husband and wife held insufficient to estop wife as against creditors.**

Where by mistake land was conveyed to husband and wife when it was intended to be conveyed to the wife only, that she permitted the title to remain on record in the name of her husband and herself *held* not under the evidence sufficient to raise an issue of estoppel as to a creditor of the husband; it not appearing that the credit was extended on the faith of the husband's apparent ownership of the land.

Appeal from District Court, Armstrong County; Henry S. Bishop, Judge.

Separate actions by State Bank of Groom against Thomas J. David and wife in trespass to try title, and by Mrs. Thomas J. David and husband against the Bank to restrain a levy and sale of land under a judgment against her husband. Cases tried as if consolidated, and Thomas J. David and wife appeal. Reversed and remanded.

S. E. Fish, of Amarillo, and J. S. Stalling, of Claude, for appellants.

Hugh L. Umphres, of Amarillo, for appellee.

HUFF, C. J. This is an appeal by David and wife from a judgment in favor of the appellee bank, establishing a judgment lien and to foreclose the same against an undivided 13/23 interest in and to 320 acres of land in Armstrong county, save and except a homestead of 200 acres to be thereafter

---

designated by David and wife, within 10 days after notice to them by the officer to whom an order of sale should be delivered for execution, and dissolving an injunction issued at the instance of David and wife, restraining the levy and sale of the land under a former judgment against Thomas J. David, and in favor of the appellee bank.

The above judgment was obtained in a consolidated suit. The bank first brought suit against David and wife in trespass to try title and by second count to foreclose a judgment lien in its favor. The appellants answered this action not guilty, general denial, and specially that the entire 320 acres was the separate property of the wife, paid for by her separate funds. Thereafter Mrs. David brought suit against the bank, joined by her husband, seeking an injunction restraining the levy and sale of the land under the judgment lien against her husband. It seems the cases were thereafter tried as if consolidated, but we find no order to that effect or for repleader in the consolidated cause, but the case seems to have been prosecuted under the numbers of the two first suits. The pleadings of each party partake both of an original petition and an original answer and so with reference to the supplemental pleadings.

From an examination of the various pleadings we gather the issues were substantially as follows: The appellee bank alleged that on the 2d day of July, 1920, it recovered a judgment against Thomas J. David for the sum of $3,469.34, with interest from the 10th of August, 1920, the date of the rendition of the judgment, at the rate of 10 per cent. per annum. That the appellee caused an abstract of judgment to be recorded in the county clerk's office of Armstrong county, where the land in question is situated, on the 16th day of August, 1920, and duly indexed, fixing a valid and subsisting lien on all real estate owned by Thos. J. David. That the judgment was unsatisfied except $15.75, credited thereon. That the community estate of Thomas J. David and Nora R. David owned the 320 acres of land at the time of the recordation of the judgment lien. That on or about August 6, 1920, Thomas J. David made a pretended conveyance of the land to his wife, Nora R. David, to prevent the appellee from collecting its debt, which was then in suit and just four days before judgment was entered. That thereafter Thomas J. David was not left with sufficient property to pay his debts. That the deed was as to appellee fraudulent and void and should be canceled. That at the time appellant bought the property in 1908 a deed was executed to the community and so recorded in Armstrong county, where it rested until the attempted conveyance aforesaid. It is also alleged in a separate pleading that the original deed in 1908 was made to Thomas J. and Nora R. David, jointly, and so record-

ed, with no recital therein rebutting the presumption of title in the community, and that the deed to Mrs. David above set out was given to hinder and defraud creditors, and especially appellees, in the collection of their just debts, and kept secret until after the indebtedness accrued on which the aforesaid judgment was obtained against Thomas J. David. That when the deed to Mrs. David was executed by her husband, he was insolvent and unable to pay his debts, and the deed is therefore void as to appellee. That they bought the land wholly, or at least in part, with community funds, and the land is therefore subject to execution against T. J. David.

The appellants, David and wife, plead that the 320 acres of land is and was the separate property of Mrs. David, bought with funds that she received from the estate of her deceased father and mother. They deny that the conveyance of August 6, 1920, from T. J. David to his wife, was made for the purpose of hindering or defrauding the appellee, but allege that, when the property was purchased in 1908, the scrivener was instructed to write the deed vesting the title in Mrs. David as her separate property, but in the absence of the appellants at that time from the state, instead of so drafting the deed, through error, a conveyance was made to Mr. and Mrs. David jointly. That the land was bought and paid for by the separate property of the wife, as aforesaid. Thereafter, on or about 1915, Thomas J. David, in order to make the deed and records speak the truth, executed, acknowledged, and delivered to Nora R. David a deed conveying the land to her, thereby vesting in her all title which might be shown of record that he had in the land. That deed was, after delivery to the wife, lost or destroyed. As soon as appellants learned of this on July 28, 1920, Thomas J. David executed another deed conveying the title to his wife, Nora R. David, which was executed in lieu of the deed before mentioned, which had been lost or destroyed. It is alleged in the original answer to appellee's suit that the land had been paid for out of Mrs. David's separate funds, and all the payments which had been made thereon had been paid out of her separate funds received from the estate of her father and mother. They also plead their homestead was situated on the land and that they were entitled to 200 acres therein as such.

The record shows on the 10th day of August, 1920, the appellee bank obtained a judgment against Thomas J. David for the sum of $3,469.36, principal, interest, and attorney's fees, with 10 per cent. interest from the date of the judgment, foreclosing a chattel mortgage on certain personal property, stock, and farming implements, and which had also covered growing crops on the land

in question; the judgment reciting that the mortgage liens be foreclosed on the personal property therein described as they existed March 29, 1919, December 13, 1918, and May 2, 1918. Order of sale on the above judgment and return thereon showing a levy on one horse, a disc and harrow, and a sale thereof, which brought $50, and after paying costs left $15.75 to be credited on the judgment.

Abstract of the above judgment in the cause of appellee bank against Thomas J. David, No. 379, recorded August 16, 1920, at 9 a. m., giving date of judgment August 10, 1920, for the amount of $3,469.36. The judgment is properly indexed.

Deed from C. H. Harris and wife to Thomas J. David and Nora R. David, conveying the land in question for a recited consideration of $9,200. Cash paid $4,000, and deferred payments $1,000 due June 10, 1909, $2,100 due June 10, 1910, $2,100 due June 10, 1911, with interest at 6 per cent. The deed retains a vendor's lien to secure payment of the notes and is dated June 10, 1908, duly recorded in the deed records of Armstrong county, June 23, 1908.

Deed from Thomas J. David to Nora R. David, dated July 28, 1920, to the land in question, filed and recorded August 6, 1920, in the deed records of Armstrong county. The recitation in the deed is as follows:

"For and in consideration of the sum of one dollar to me in hand paid by Mrs. Nora R. David, receipt of which is hereby acknowledged, and for the purpose of vesting the title to the said property in the proper party, the said Mrs. Nora R. David having bought and fully paid for the land hereinafter described with her own separate funds and having my name inserted in said deed as grantee therein, in order to show the title vested in the proper party, have granted, sold and conveyed and by these presents do grant, sell and convey unto the said Mrs. Nora R. David (as her own separate estate) of Armstrong county, Texas, the following described real estate, etc."

The case was submitted to a jury upon special issues. The jury found that the cash payment of $4,000 made in the purchase of the land was made with the separate funds of Mrs. Nora R. David; that since then of the consideration paid thereon has been paid $2,989.25, all of which was paid out of the community estate and with none of the wife's separate funds; that Thomas J. David did not have sufficient additional property to pay the bank's debt after making the conveyance to his wife July 28, 1920; that such conveyance was made for the purpose of hindering and delaying his creditors, especially the appellee; that Thomas J. David did, in the year 1915, execute, acknowledge, and deliver to Mrs. Nora R. David a deed conveying to her the land in controversy; that appellants did not intend that the deed from Harris should convey the land to Nora R. David; that appellee did not have notice of the

deed executed in 1915 at the time it recorded its abstract of judgment on the 16th day of August, 1920; that it was not the intention of Thomas David, in paying the consideration out of the community fund, that it should be applied on the indebtedness due by him to his wife.

We believe this appeal may properly be disposed of under the tenth assignment of error, which is to the effect that the finding by the jury that Thomas J. David in the year 1915 executed and delivered to his wife a conveyance to the land in question, and also propositions 3 to 6, inclusive, asserting that the possession and occupancy of the land by the wife and the deed of date July 28, 1920, and the record thereof, were sufficient to charge appellee with notice of her right.

The evidence is to the effect that in 1902 the father of Mrs. David died, leaving to her from his estate about $1,400 cash and 100 acres of land situated in the state of Indiana. In 1906 the land was sold for $9,000 cash and that same, or at least part of it, was held in the bank until 1908, when the land in question was purchased. The finding of the jury that the cash consideration, $4,000, paid on the land at the time it was purchased from Harris, was paid by Mrs. David out of her separate estate, is amply sustained by the evidence. The evidence also sustains the finding that in 1915 Thomas J. David did execute and deliver a deed to his wife, conveying to her the land in question. There is no evidence in this record showing at that time appellee was a creditor of Thomas J. David or that he had any creditors or was then insolvent and unable to meet his obligations, if he had any, out of other property than the land.

[1-4] The loss or destruction of the deed executed in 1915 did not divest the wife of her title in and to the land conveyed thereby. Van Hook v. Simmons, 25 Tex. Supp. 323, 78 Am. Dec. 573; Thomas v. Groesbeck, 40 Tex. 530; Sanborn v. Murphy, 86 Tex. 437, 25 S. W. 610; Stanley v. Epperson, 45 Tex. 644. Whatever may have been the intent of Thomas J. David in executing the deed of July 28, 1920, would not affect the wife's rights to rely upon her title secured under the former deed or make her acceptance of the latter deed, if she accepted it, to evidence such title, void as to her. She had a legal right to secure her interest by the latter deed. Galbreath v. Templeton, 20 Tex. 45; Milby v. Regan, 16 Tex. Civ. App. 352, 41 S. W. 372. "What it is lawful to do cannot become unlawful by reason of the fact that it is done through a motive or with an intent not friendly to all creditors. A hindrance or delay which does not operate as a fraud upon other creditors is not that prohibited by law." Haas v. Kraus, 86 Tex. 687, 27 S. W. 256; Bruce v. Koch, 94 Tex. 192, 59 S. W. 540. If, as recited in the deed of July 28,

1920, the land was the separate property of Mrs. David, when it was executed, and there was then no evidence of that fact upon the record, it was no fraud upon appellee or any other creditor of Thomas J. David to make the record speak the truth. The last deed, therefore, would not be void as to appellee for the reason that it took from the creditor no property upon which it had a right to rely for the payment of its debt. Barnett v. Vincent, 69 Tex. 685, 7 S. W. 525, 5 Am. St. Rep. 98; Peck v. Jones, 10 Tex. Civ. App. 335, 30 S. W. 382; De Berry v. Wheeler, 128 Mo. 84, 30 S. W. 338, 49 Am. St. Rep. 538; Fidelity Trust Co. v. Rector (Tex. Civ. App.) 190 S. W. 842 (2). Whether the deed executed in 1915 was upon a valid consideration or a voluntary conveyance, it would not be fraudulent and void as to appellee under either article 3966 or 3967, R. C. S., unless at that time appellee was a creditor of the husband. This fact the burden was upon appellee to establish. De Garca v. Galvan, 55 Tex. 53; Reynolds v. Lansford, 16 Tex. 287; Gonzales v. Adoue, 94 Tex. 120–124, 58 S. W. 951; Dosche v. Natte, 81 Tex. 265, 16 S. W. 1013; Bank v. Hall (Tex. Civ. App.) 30 S. W. 73.

[5-7] As we understand, it will not affect Mrs. David's right if appellee did not have notice of the existence of the deed made in 1915, if it was charged with notice that the land was the separate property of the wife when it filed its abstract of judgment. The deed of July 28, 1920, was then duly recorded, and it was notice to appellee and to all the world that the property was the wife's separate estate, and paid for by her separate money. The jury found the cash payment of $4,000 was out of her separate funds. It is conceded that 200 acres thereof is the homestead. If the deferred payment was made out of the community funds, this did not render her title as to that portion fraudulent as to appellee, as it was not then a creditor of David. The husband then had the right to convey to his wife the land, either by gift or upon the consideration that she had furnished the purchase money, and he could have given her the community funds which went in to the land. The mere fact that the appellee did not receive notice of her title until after it became a creditor will not defeat her rights if it had notice before its lien attached. We conclude that the finding that the husband did not have property to pay the bank after the conveyance to the wife, July 28, 1920, and that such conveyance was made to hinder and delay the bank or his creditors, will not affect the rights which had previously vested in the wife and of which right the last deed gave notice. The finding that the deferred payments were paid out of the community estate, and that it was not the intention of David that the consideration paid out of the community fund should be applied on the indebtedness due by him to his wife, it is claimed by appel-

lant is not supported by the evidence. However, this is not a finding that it was not then the purpose to vest the entire estate in the land in the wife, both by the money paid by her and a gift of the community interest in the land. The deed evidences the fact that the entire property in the land was in the separate estate of the wife when the deed in 1915 was made.

[8] As above shown, the appellee was not then a creditor, and the conveyance thereof to her was no fraud upon appellee. If the husband and wife are to be believed in this case, the land was conveyed to her to pay a debt due her by him. That issue in terms was not submitted to the jury; but, if the jury meant to find that the wife held the community interest in her name only, then we think the finding that it was conveyed to her in 1915 and the undisputed fact that the deed of 1920, giving notice that it was her separate estate, are so contradictory that a judgment ought not to have been rendered on the verdict of the jury against her. We cite the case of McClintic v. Midland Grocery Co., etc., 106 Tex. 32, 154 S. W. 1157, discussing property rights between husband and wife, where the authorities are collated and discussed. The appellant contends that upon the finding that the deferred payments were made out of the community, etc., that there is no evidence in the record supporting such finding. We would not feel justified in so holding. The source of the money so paid is not, as we read the record, clearly traced. David would seem to say in some parts of his testimony that he paid this money out of crops and from community sources. It is true both husband and wife testify that the husband used her separate funds and was indebted to her therefor, and it would seem therefrom that the conveyance was made to pay this indebtedness according to their testimony. We have concluded not to discuss this evidence, as the case will be reversed, and at this time we are unwilling to hold there is no evidence supporting the verdict of the jury thereon.

[9-12] We do not think the mere fact that the wife was living on the land with her husband sufficient to afford notice of her separate right thereto, when the deed of record placed the title in the community. Parker v. Coop, 60 Tex. 111; Allday v. Whitaker, 66 Tex. 669, 1 S. W. 794; McKamey v. Thorp, 61 Tex. 648; Blankenship v. Douglas, 26 Tex. 225, 82 Am. Dec. 608. In so far as the $4,000 paid on the original purchase is concerned, a trust for that amount was created in favor of the wife and was not subject to the registration laws. As to the balance of the consideration paid, and whether the conveyance was made as a gift or to pay a pre-existing debt in favor of the wife, the registration laws will apply as to that portion of the land represented by the payments on the deferred consideration. The

appellee would not be an innocent purchaser if before he secured a lien as a creditor the records afforded notice that the land belonged to the wife's separate estate, and the appellee would not be protected as a creditor under article 6824, R. C. S., unless it secured a lien on the property without notice. Turner v. Cochran, 94 Tex. 480, 61 S. W. 923. The creditor who is protected under the statute is one who has acquired a lien by a proceeding at law, and not a simple contract creditor or one holding a contract lien. The above case discusses the distinction as to the creditors mentioned in the statute.

[13] There is a suggestion that by permitting the title to remain on record in the name of the husband and wife that Mrs. David would be charged with negligence, inducing the appellee to extend credit to her husband. There is no testimony in this case raising the issue of estoppel. The bank does not show that it extended credit to David on the faith of his apparent ownership of the land. The records show that the debt upon which the judgment of appellee was obtained was secured by a chattel mortgage on cattle, horses, farming implements, and growing crops. In so far as this record shows, the security for the debt was the personal property above mentioned and was the inducement to appellee in extending credit to the husband. The trial court was not, therefore, warranted in rendering judgment on the ground of estoppel. We have not endeavored to determine the law with reference to estoppel as a defense by appellee on the issue here suggested, as the issue is not raised by the evidence. However, if the wife had the title to this land before the appellee became a creditor, as found by the jury, it well may be questioned whether estoppel could in any event be invoked. The Supreme Court of this state has given this question a very full and exhaustive discussion in the case of Bicocchi v. Casey-Swasey Co., 91 Tex. 259, 42 S. W. 963, 66 Am. St. Rep. 875. We respectfully refer to that case as possibly furnishing the rule of law governing estoppel that may arise in another trial of this case.

We believe the judgment of the trial court should be reversed and the case remanded.